PONDER, Judge.
This is an appeal by Browning-Ferris Industries, Chemical Services, Inc. from an order of the Louisiana Environmental Control Commission, dated May 12, 1983. Paragraph X of the order directed BFI to cease the receipt of all hazardous materials for landfill cells and to initiate the closure of those cells at its disposal facility near Willow Springs Road in Calcasieu Parish by December 31, 1983.
The Willow Springs facility was originally developed as a waste disposal facility by prior owners in the 1960’s. BFI acquired the property in 1972, and obtained a permit from the Louisiana Department of Health and Human Resources in 1977 to conduct commercial landfill operations.
Upon passage of the Louisiana Environmental Affairs Act in 1979, LSA-R.S. 30:1051, et seq., BFI timely submitted applications for permanent permits. In 1980, the Commission issued BFI a compliance schedule but has not yet granted the permits. Prior to the hearing of March, 1983, BFI withdrew, in February, 1983, its application for permits. As a matter of fact, BFI expressed its intent to close the facility by 1985.
In the fall of 1982, a possibility that the cells at the facility had caused contamination of soils and an aquifer lying some 50 feet beneath the surface of the soil was found. This aquifer is connected at or near the site to the main aquifer supplying some 70,000 people. Pursuant to an order of the Commission, BFI employed an independent geotechnical consultant, Woodward-Clyde Consultants, to prepare a report on the site and the extent of the contamination. Upon receipt of the report, the Commission ordered a special hearing to be held on March 14, 1983, to consider the report and related geotechnical data, and also to consider the issuance of an updated or revised compliance order in light of the new data and BFI’s declaration of its intention to discontinue its landfilling operation in 1985,[1] sent to the Commission in the interim.
After several sessions, the hearings were concluded on May 12, 1983, and the Commission issued a final order styled, “Compliance Order and Schedule for Closure”.
BFI perfected its appeal pursuant to LSA-R.S. 30:1072 B, setting forth the following specification of errors:
*757 (1) The Commission’s Finding of Fact No. VI is manifestly erroneous to the extent that it finds or suggests that Respondent has withdrawn its pending application for hazardous waste landfill activities at Secure Cells 7 and 8 at this facility.
(2) The Commission’s Paragraph X of the Order is in violation of constitutional and/or statutory provisions in requiring that the respondent cease the receipt of all hazardous materials for landfill cells by December 31, 1983 and immediately thereafter initiate the closure of these cells.
(3) The Commission’s Paragraph X of the Order is in violation of its statutory and/or regulatory authority in requiring that the respondent cease the receipt of all hazardous materials for landfill cells by December 31, 1983 and immediately thereafter initiate the closure of these cells.
(4) The Commission’s action in Paragraph X of the Order, which effectively sets a December 31, 1983 closure date for landfill activities, is in violation of required statutory and/or regulatory procedural provisions as such actions can only be taken in appropriately noticed hearings, conducted for that purpose, and with appropriate Findings of Fact, none of which was done.
(5) The Commission’s decision, in Paragraph X of the Order, which effectively sets a December 31, 1983 closure date for landfill activities, is arbitrary and capricious as well as manifestly erroneous as there is no evidence in the record, supporting this closure date.
(6) The Commission’s action in Paragraph XI of the Order is ancillary to Paragraph X of the Order; to the extent it requires submission of a closure date for landfill activities on or about September 30, 1983 and to the extent to which it requires a permit resubmission excluding landfill activities, it is in violation of required statutory, regulatory and/or procedural provisions as well as arbitrary, capricious and manifestly erroneous.”
In summary, therefore, BFI seeks a reversal of paragraphs X and XI of the Commission’s Final Order, and a reversal of Findings of Fact No. VI.
We affirm.
BFI contends that, in effect, the Final Order of the Commission constitutes a revocation or denial of a permit, in violation of applicable statutory and regulatory procedural provisions, as such actions can only be taken in adjudicatory hearings, conducted for that purpose, after proper notice and with appropriate findings of fact; and that the Commission’s ordering cessation of landfill activities is arbitrary, capricious, manifestly erroneous, and not supported by the record as a whole.
The Commission contends its power to order the cessation of receipt of all hazardous materials at this site by December 31, 1983, is an essential part of the authority to issue a schedule of compliance or performance guidelines; does not constitute a revocation or denial of a permit, in violation of applicable statutory and regulatory provisions; and that the order is not arbitrary, capricious, manifestly erroneous, and unsupported by the record.
The Louisiana Environmental Affairs Act is incorporated into the Revised Statutes as LSA-R.S. 30:1051, et seq. The creation and authority of the Commission is set forth in R.S. 30:1062, et seq. Part VII of the Act, designated as the Hazardous Waste Control Law, is set forth in R.S. 30:1131, et seq. Pursuant to the authority granted under the Act, the Commission adopted Rules of Procedure, “to provide a procedural system governing the operation of the Environmental Control Commission and practice before the Commission in the administration and enforcement of the Louisiana Environmental Affairs Act (LSA-R.S. 30:1051, et seq.) and the Louisiana Administrative Procedures Act (LSA-R.S. 49:951-64).” In addition, the Commission *758 adopted the Hazardous Waste Management Plan Rules and Regulations.
Prior to the effective date of the Act and Regulations thereunder, BFI operated its facility under the authority of Chapter X of the Louisiana Sanitary Code. Under the provisions of LSA-R.S. 30:1146[2] BFI qualified as an existing facility and was allowed to continue operations under the prior authorization. Pursuant to the provision of Section 1146 that the operator comply with the requirements of Section 1137[3] of the Act, BFI timely submitted the required notices and in due course an application “for any necessary licenses, permits, schedules of compliance or performance guidelines.” On. December 30, 1980, the Commission issued a Compliance Schedule and Performance Guidelines. No hearing on BFI’s application for a permit has ever been held and consequently no decision has been made on granting or denying the permit under the new Act and Regulations.
BFI contends that as an existing facility in interim status its facility may continue its operations, and that the operations are to be governed by the Compliance Schedule issued in December of 1980 including all subsequent additions or revisions. It also *759 argues that Section 1071[4] of the Act grants it the authority to continue to operate under its old permit issued under Chapter X of the Louisiana Sanitary Code, unless this old permit is revoked for cause, and that pursuant to the provisions of Sections 1071 and 1146 of the Act, its status should remain unchanged until such time as (1) the Commission undertakes to hold an adjudicatory hearing on its permit application and grants or denies a permanent operating permit, or (2) pursuant to Section 1071, cause is shown for revocation of its prior legal authority to operate this facility.
The Commission argues that under the language of Section 1146 the facility operates “only in accordance with the decision and subject to the terms and conditions imposed by the commission;” that once this first Schedule of Compliance had issued, BFI no longer had a permit, so that the provisions of Section 1071 are no longer applicable.
Sections 1071 and 1146 should be read as being coexistent and consistent with each other. We find that Section 1071 provides for the continuing existence of licenses and permits, unless revoked for cause, until the owner becomes subject to the terms of Section 1146.
The plain wording of Section 1146 allows the continuation until “the setting of a schedule or performance guidelines by the Commission and thereafter only in accordance with the decision and subject to the terms and conditions imposed by the Commission.” It is admitted that a schedule of compliance was issued on December 30, 1980. After this date, the permit issued by the prior agency was no longer effective. The order of May 12, 1983, therefore was the amendment of an existing schedule, that of December 30, 1980, or the issuance of a replacing one. We find no bar to that action, especially since BFI had neither a permit nor a pending application for one. The requirements of the statutes and regulations governing the revocation of a permit, therefore, are not relevant.
We find another reason that a full adjudicatory hearing is not required. When BFI notified the Commission of its intent to close in 1985, the question of a permit became moot until resubmission of its application. Whether BFI had a permit or not did not affect the Commission’s powers to control the process of closure. The issuance of a schedule was in order to protect the environment against excessive interim use of the facilities that would prevent the availability of the present capacity to insure the orderly and complete provisions for the closure of the pits. BFI’s contention that they should be allowed to continue filing the pits until 1985 would render toothless the Commission’s powers granted under Section 1066(4)[5] when confronted with a closure. The Commission had not only the power but the responsibility to fulfill the aim of the legislation. The substitution of our judgment as to what might be required for the orderly and safe closure of the pits is neither desirable nor allowed. We do not adopt the contention that a schedule cannot be applied to a closure.
Of more than passing interest is the fact that BFI knew for months before the March hearing that the Commission would consider the issuance of a compliance order for the closure and cleanup of the landfill at the Browning-Ferris Industries’ Willow Springs facility, and neither objected to the consideration nor demanded an adjudicatory hearing. BFI made it impossible to hold an adjudicatory hearing on the application for a permit by withdrawing the application.
*760 BFI’s facility was an existing one and the effect of the order was to allow the continued existence of that facility for only seven months more to be added to the thirty months BFI had already had. BFI was free to, and is still free to, submit an application for a permit covering Pits 7 and 8.
Furthermore, in brief, appellant has stated that the Commission has without authority and arbitrarily ordered the closure of its facilities. This is incorrect. BFI notified the Commission of its intent to close the facility. Thereafter, the Commission acted within its powers to supervise and control the procedure so as to cause the receipt of materials to cease with sufficient capacity remaining to insure a safe closure.
We have examined the entire record and find that the unanimous action of the Commission is supported by the record and is not arbitrary, capricious or manifestly erroneous.
For these reasons, the actions of the Environmental Control Commission are affirmed at appellant’s costs.
AFFIRMED.
CARTER, J., concurs and assigns written reasons.

. The following notice of hearings is found in the record:
"LOUISIANA ENVIRONMENTAL CONTROL COMMISSION STATE LAND AND NATURAL RESOURCES BUILDING
MINERAL BOARD HEARING ROOM
FIRST FLOOR
625 NORTH FOURTH STREET
BATON ROUGE, LOUISIANA 70804
March 14, 1983
9:00 a.m.
AGENDA
I. Consideration by the Commission of the arguments of GHR for an indefinite stay of the enforcement proceedings pending against GHR Energy Corporation.
II. Consideration by the Commission of the issuance of a compliance order for the closure and cleanup of the landfill at the Browning-Ferris Industries’ Willow Springs facility.”

. LSA-R.S. 30:1146
The owner or operator of any facility or equipment in existence and being used on the effective date of the regulations promulgated under this Part, who is authorized by regulations or a permit issued pursuant to Chapter X of the Louisiana Sanitary Code or other applicable law to transport, treat, store, or dispose of hazardous wastes, and who complies with the requirements of Section 1137 of this Part, may continue to transport, treat, store, or dispose of such hazardous wastes in accordance with such permit or regulations or other applicable state laws until the issuance or denial of a permit or license or the setting of a schedule of compliance or performance guidelines by the commission, and thereafter only in accordance with the decision and subject to the terms and conditions imposed by the commission.

. LSA-R.S. 30:1137
A. No later than ninety days after the effective date of the regulations authorized by this Part, every person not otherwise exempt, who generates in the state, or who transports or desires to transport in the state any hazardous wastes, or who owns or operates or desires to own or operate a treatment, storage, or disposal facility which handles hazardous wastes within the state, shall file with the assistant secretary or commission a notification stating the nature and location of the activity conducted or desired to be conducted, and if required by regulations, a request for an application for any necessary licenses, permits, schedules of compliance, or performance guidelines.
B. It shall be unlawful to initiate or continue the generation, transportation, treatment, storage, or disposal of hazardous wastes after the time period provided in Subsection A of this Section, except in compliance with the notice requirements thereof.
C. Upon receipt of the notices required in Subsection A of this Section, or as soon as practicable thereafter, the commission shall initiate the procedures as required by this Part and the regulations applicable thereto for the issuance or denial of permits and licenses and the establishment of schedules of compliance and performance guidelines for facilities and equipment.
D. Upon the issuance of a license or permit, or the establishment of a schedule of compliance or performance guidelines, it shall be unlawful to transport, treat, store, or dispose of hazardous wastes except in accordance with the terms and conditions thereof and the regulations applicable thereto.
E. Except as provided in Subsection F of this Section, enforcement of this Part and the rules and regulations promulgated hereunder shall be in accordance with R.S. 30:1073.
F. Any person who willfully or knowingly discharges, emits, or disposes of any substance in contravention of any provision of this Part, of the regulations, or of the permit or license terms and conditions adopted in pursuance thereof, or any person who otherwise knowingly violates any provision of this Part, shall, upon conviction be subject to a fine of not more than one hundred thousand dollars per day of violation and costs of prosecution, or imprisonment at hard labor for not more than ten years, or both.
G. No person shall tamper with or cause to be tampered with any hazardous waste container or the contents thereof, nor discharge or cause to be discharged the contents of said container between the point of origin and point of destination listed in the manifest, nor discharge or cause to be discharged the contents of said container at any location other than that for which it is permitted unless ordered to do so by the office of environmental affairs, or otherwise allowed by this Chapter and rules or regulations promulgated thereunder. Any person willfully violating this Subsection shall be subject to the civil and criminal penalties provided by this Part.

. LSA-R.S. 30:1071:
All presently valid licenses, registrations, variances, or permits heretofore granted by the agency having prior jurisdiction over any activity covered by this Chapter shall continue in effect according to their present terms and conditions, unless revoked for cause.

. LSA-R.S. 30:1066:
(4) To issue such orders or determinations as may be necessary to effectuate the purpose of this Chapter, including but not limited to the issuance of cease and desist orders as provided in R.S. 30:1073 and to delegate the power to issue such orders to the assistant secretary.